COMMONWEALTH of Pennsylvania,
Appellee,

v.

Anthony McCLEASE, Appellant.

Superior Court of Pennsylvania.

Argued Feb. 29, 2000.

Filed March 28, 2000.

Kevin Leckerman, Doylestown, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Warington, for Commonwealth, appellee.

Before McEWEN, President Judge, and JOHNSON and OLSZEWSKI, JJ.

JOHNSON, J.:

¶ 1 In this appeal we consider whether an exchange between a police officer and a member of the public may rise from the level of a mere encounter to that of a seizure absent evidence that the purportedly seized person intended to leave the scene prior to or during the exchange with the police officer. We hold that notwithstanding the absence of evidence to establish a person's intent to leave the scene, a seizure occurs when, under all the surrounding circumstances, a reasonable person would not feel free to leave. Therefore, we reverse the suppression court's order that denied Anthony McClease's motion to suppress because the trial court erroneously concluded that the exchange between McClease and the police

did not rise to the level of a seizure at the time the police ordered McClease to remain in his vehicle.

¶ 2 McClease appeals from the order denying his post-sentence motion following his convictions for possession of a controlled substance, possession of a controlled substance with intent to deliver, possession of a small amount of marijuana, and possession of drug paraphernalia. *See* 35 P.S. § 780–113(a)(16), (30)–(32) (respectively). McClease alleges that the trial court erred in denying his motion to suppress evidence upon which his convictions were based because the police lacked reasonable suspicion to conduct an investigatory stop.

> When we review the ruling of a suppression court, we must determine whether its factual findings are supported by the record. Where the defendant challenges an adverse ruling of the suppression court, we will consider only the evidence for the prosecution and whatever evidence for the defense which is uncontradicted on the record as a whole; if there is support on the record, we are bound by the facts as found by the suppression court. . . .

*Commonwealth v. Holt*, 711 A.2d 1011, 1014 (Pa.Super.1998).

¶ 3 Viewed in light of the foregoing standard, the facts of this case are as follows. On October 24, 1998, shortly after midnight, Detective Randy Morris and Officer Joseph Moors of the Bristol Borough Police Department drove their police cruiser down Spruce Street, a residential street within their jurisdiction. The car, although unmarked, was readily identifiable as a police cruiser. Spruce Street is a narrow one-way street with parking on both sides and a narrow travel lane down the middle. As the officers drove down Spruce Street, they observed McClease sitting alone in his vehicle. McClease's vehicle was legally parked under a railroad overpass. The overpass causes this part of Spruce Street to be darker than other

parts of the street. The police had received complaints about ongoing illegal activities around this part of Spruce Street including persons drinking alcohol in public, persons possessing and displaying weapons, and persons involved in drug transactions.

¶ 4 McClease's vehicle was parked on the left side of the road. Detective Morris, who was driving, noticed that McClease's head was lowered as if he was looking at his hands. As the police vehicle passed McClease's vehicle, McClease raised his head and looked at Detective Morris. As McClease did so, his eyebrows raised, his eyes got wider, and he immediately lowered his body. Upon observing these movements, Detective Morris stopped the police cruiser and backed it up until it was abreast with McClease's vehicle. Detective Morris and Officer Moors exited their vehicle and approached McClease's vehicle.

¶ 5 Detective Morris approached McClease's vehicle by rounding the trunk and coming up the left side. Detective Morris testified that while he was walking around the rear of the vehicle, he noticed McClease spin his body "to raise to come out of the vehicle" at which point Detective Morris "ordered him ... 'Police Officer. Stay in your vehicle.'" Detective Morris testified that McClease then responded that he "'was getting ready to leave,' or words to that effect." The trial court found that as Detective Morris approached, McClease opened his door causing the interior lights to illuminate. Following Detective Morris's order, McClease remained in the car, but attempted discreetly to jettison a marijuana filled cigar [hereinafter "the blunt"] under the door. Detective Morris observed McClease's hand below the door and ordered him to put his hands in the vehicle where Detective Morris could observe them.

¶ 6 Upon further approaching the vehicle, Detective Morris noticed an open container of alcohol in the vehicle and the blunt on the street below the driver's door.

Detective Morris then ordered McClease out of the vehicle so that Detective Morris could pat McClease down. McClease complied. During the course of this exchange, Detective Morris noticed a large sum of cash in the vehicle's ashtray. The pat-down search revealed no weapons, and the officers permitted McClease to stand, without physical restraint, next to his vehicle. While standing, McClease volunteered: "You can check the whole car officers." A search of the trunk yielded 39 bags of crack cocaine and 2 bags of marijuana. Upon seizure of these items, McClease was arrested.

¶ 7 Prior to trial, McClease filed a motion to suppress the blunt, the cash in the ashtray, and the bags containing the crack and marijuana. The motion was denied. Following his convictions, McClease was sentenced to a term of no less than one year's imprisonment nor more than two years' imprisonment and a fine of $5,000. The court denied McClease's post-sentence motion, and McClease filed this appeal.

¶ 8 McClease raises the following question for our review:

> Did the Common Pleas Court err in denying Appellant's motion to suppress physical evidence seized following an unlawful investigatory detention where the police lacked reasonable suspicion of criminal activity being afoot, where the evidence seized by the police was abandoned as a direct and proximate result of Appellant's illegal detention by the police, and where the evidence seized from Appellant's vehicle was tainted because Appellant's consent to search the vehicle occurred after his illegal detention by the police officers?

¶ 9 "Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error." *Commonwealth v. Collazo*, 692 A.2d 1116, 1118 (Pa.Super.1997). "Where the record supports the findings of the suppression court,

we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts." *In the Interest of D.M.*, 743 A.2d 422, 424 (Pa.1999).

¶ 10 The crux of McClease's argument is that Detective Morris lacked the requisite reasonable suspicion for a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *In the Interest of D.M.*, 743 A.2d 422. McClease's argument is based on both federal and state constitutional grounds. "The protection against unreasonable searches and seizures afforded by the Pennsylvania Constitution is broader than that under the federal Constitution." *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571, 573 (1997). However, "[i]n determining whether reasonable suspicion exists for a *Terry* stop, the inquiry is the same under either Article 1, Section 8 of the Pennsylvania Constitution or the Fourth Amendment of the United States Constitution." *In the Interest of D.M.*, 743 A.2d at 425. Accordingly, though some federal precedents guide us in our decision here, they do not compel the result we reach. *See Michigan v. Long*, 463 U.S. 1032, 1041, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

¶ 11 Our Supreme Court has delineated three types of conduct between a police officer and a member of the public:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*In the Interest of S.J.*, 551 Pa. 637, 713 A.2d 45, 47 n. 3 (1998) (citations omitted)

(quoting *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047–48 (1995)).

¶ 12 In the instant case, the trial court determined that the initial exchange between Detective Morris and McClease was a "mere encounter" that did not rise to the level of an "investigative detention." The court concluded that the officers' detention of McClease after Detective Morris discovered the blunt and the open container of alcohol was supported by probable cause. However, McClease argues that the "mere encounter" rose to an "investigative detention" before Detective Morris discovered the blunt and the open container of alcohol. He argues that an "investigative detention" commenced upon Detective Morris's command: "Police Officer. Stay in your vehicle." Consequently, we must determine whether it was error for the trial court to reach the legal conclusion that at all times leading up to Detective Morris's discovery of the blunt and the container of alcohol the interaction between the police and McClease remained a "mere encounter."

¶ 13 In determining whether a "mere encounter" has risen to the level of an "investigative detention," the focus of our inquiry is on whether a "seizure" of the person has occurred. *Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117, 1120 (1998). Within this context, our courts employ the following objective standard to discern whether a person has been seized: "[W]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave." *Commonwealth v. Smith*, 732 A.2d 1226, 1232 (Pa.Super.1999) (emphasis added). *See also Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769, 774 (1996). Thus, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *United States v. Kim*, 27 F.3d 947, 950 (3d Cir.1994).

> Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be

the **threatening presence of several officers,** the display of a weapon by an officer, some physical touching of the person of the citizen, **or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.**

*United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (emphasis added).

¶ 14 Consequently, we must examine whether, under all the circumstances, a reasonable person in McClease's situation would have believed that he or she was free to leave and that compliance with Detective Morris's command, "Police Officer. Stay in your vehicle," would not have been compelled. Initially, we note that Detective Morris's statement to McClease was not a question or a suggestion. Detective Morris testified that he "ordered" McClease to stay in the vehicle. Furthermore, Detective Morris's show of authority was bolstered by the presence of Officer Moors. We conclude that under these circumstances, no reasonable person would have felt free to disregard Detective Morris's order and leave the scene. A reasonable person in McClease's situation would no doubt conclude that any attempt to leave the scene after Detective Morris's order to stay in the car would have invoked compulsion by the officers.

¶ 15 The trial court found that at the time Detective Morris approached McClease, he showed no desire to leave the area. Consequently, the Commonwealth argues that because McClease was not going anywhere, he could not have been seized. However, after a careful review of the case law on this issue, we have found no authority that states that a person must be in transit or display a desire to leave a scene in order for that person to be seized. *See generally Commonwealth v. Allen,* 555 Pa. 522, 725 A.2d 737, 741 (1999) (stating that the police had conducted an "investigative stop" of a suspect even though at the time of the stop the suspect was asleep in a chair on the front

lawn of his home). As mentioned earlier, the standard to be used is an objective one. This standard necessarily focuses on how a reasonable person would perceive a police officer's conduct and does not in any way consider the subjective intent of the purportedly seized person. To reiterate, we conclude that Detective Morris's show of authority in stating "Police Officer. Stay in your vehicle," would cause a reasonable person to believe that he or she was not free to leave. Accordingly, we conclude that upon Officer Morris's utterance of this order, McClease was seized, and the investigative detention commenced.

¶ 16 The trial court stated that it could "find no authority which suggests that it was improper for the officer to 'freeze the status quo' by requiring that the defendant stay in the vehicle with hands in view so that the officer could approach the vehicle and speak with him." What the trial court apparently fails to recognize is that implicit in the freezing of the status quo is an interference with a person's liberty interest in changing the status quo. This interference with a person's prerogative to change the status quo is a seizure. *See Mendenhall,* 446 U.S. at 553, 100 S.Ct. 1870 (stating that a police officer's "show of authority" that restrains a person's "freedom of movement" is a "seizure" that invokes constitutional safeguards). However brief that seizure may be, it must be supported by reasonable suspicion. *See Allen,* 725 A.2d at 740.

¶ 17 We must next determine whether the Commonwealth demonstrated that there was reasonable suspicion to support the seizure. "[A]n investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion." *Commonwealth v. Hall,* 558 Pa. 16, 735 A.2d 654, 659 (1999). McClease cites to

*Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030 (1992), in support of his argument that Detective Morris and Officer Moors lacked reasonable suspicion to stop him. In *DeWitt*, the trial court granted the defendant's motion to suppress evidence seized during an investigatory stop. The defendant was in a parked car with a group of individuals when the police approached them. The police had previously received reports of criminal activity in the area, and the defendant was observed making furtive movements. Though the defendant also attempted to flee upon approach by the police, the trial court concluded that the police lacked either probable cause or reasonable suspicion to stop the defendant. *See DeWitt*, 608 A.2d at 1032. The Commonwealth appealed, and this Court reversed. *See Commonwealth v. Dewitt*, 408 Pa.Super. 645, 588 A.2d 559 (1990) (unpublished memorandum). We concluded that the circumstances preceding the stop demonstrated a basis for reasonable suspicion. *See id.* The Supreme Court reversed, finding that our conclusion that the stop was legal was unsupported by the record. *See DeWitt*, 608 A.2d at 1034. The Court stated that though:

> [t]he police had previous notice from the property owner of criminal behavior in the church parking lot, there was absolutely no evidence that the vehicle in question was engaged in the type of activity complained of. Additionally, this Court has held that flight, in and of itself, does not constitute probable cause to arrest. We would be hard pressed to find that flight, in and of itself, constitutes reasonable suspicion of criminal conduct. Based upon the remaining facts, we find that there was insufficient evidence to make an investigative stop. We hold, therefore, that the police did not have ... reasonable suspicion of criminal conduct to justify the stop made in the instant case.

*Id.* (citation omitted). Thus, in *DeWitt* our Supreme Court held that the combination of furtive movements, late time of night, previous reports of criminal activity in the area, **even when accompanied by flight**, do not establish an adequate basis for reasonable suspicion. *Id.*

¶ 18 As the defendant in *Dewitt*, McClease was stopped late at night in an area that had previous reports of criminal activity. Prior to the stop, Detective Morris noticed McClease sitting in his car with his head down as if he were looking at his hands. Similar to the defendant in *Dewitt*, McClease was observed making furtive movements. In *Dewitt*, our Supreme Court held that these factors are not sufficient to establish reasonable suspicion. Moreover, in *Dewitt*, in addition to the foregoing factors, the defendant attempted to flee. Notwithstanding the presence of this additional bolstering factor for reasonable suspicion, the Court still found the evidence insufficient. Thus, in the instant case, Detective Morris had fewer facts to establish reasonable suspicion than did the police in *Dewitt*. Therefore, applying our Supreme Court's jurisprudence to the facts of the instant case, we are compelled to conclude that the specific and articulable facts observed by Detective Morris and Officer Moors, and any rational inferences drawn therefrom, are insufficient for us to conclude that the officers possessed the requisite reasonable suspicion that McClease was currently engaged in criminal activity. Consequently, the stop of McClease was illegal.

¶ 19 Having determined that the initial investigatory stop of McClease was illegal we must next address two arguments raised by McClease as to why the trial court erred in denying his motion to suppress the blunt, the cash, and the bags of crack cocaine and marijuana. First, McClease cites *Matos*, 543 Pa. 449, 672 A.2d 769, in support of his argument that the blunt should have been suppressed because the causative factor of his abandoning the blunt was the illegal stop by Detective Morris. *See also Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). In *Jeffries*, we stated that

 

when the police unlawfully detain a person, and the unlawful detention motivates the person to abandon contraband that is then discovered by the police, the evidence is tainted as a result of the initial illegality. *Jeffries*, 311 A.2d at 918. *See also Matos*, 672 A.2d at 774 (stating that the exclusionary rule should be applied to suppress evidence of abandoned contraband when the contraband was abandoned after an initially illegal detention).

¶ 20 In the instant case, the illegal detention occurred when Detective Morris ordered McClease to stay in his car without any reasonable suspicion that criminal activity was afoot. Seconds later, McClease attempted to jettison the blunt under his car door. Had Detective Morris not seized McClease, McClease would have been free to walk away and would have had no reason to abandon the blunt. Thus, the illegal detention was clearly "the causative factor in the abandonment." *Matos*, 672 A.2d at 774. Consequently, the trial court erred in denying McClease's motion to suppress the blunt because the blunt was fruit of the initial illegality.

¶ 21 McClease next argues that his consent to search the car was invalid because it followed an illegal detention. The law of our Commonwealth is clear that "[w]hen a consensual search is preceded by an illegal detention, 'the government must prove not only the voluntariness of the consent under the totality of the circumstances but ... must also establish a break in the causal connection between the illegality and the evidence thereby obtained.'" *Commonwealth v. Sierra*, 555 Pa. 170, 723 A.2d 644, 647–48 (1999) (omission in the original) (quoting *United States v. Melendez–Garcia*, 28 F.3d 1046, 1053 (10th Cir.1994)). In the instant case, we discern no break in the causal connection between the illegal detention and the seizure of the drugs from McClease's vehicle. Moreover, the Commonwealth ·bears the burden of proving the validity of a consent following an illegal

detention; a burden that they have not attempted to meet in this appeal.

¶ 22 For all the foregoing reasons, we conclude that the trial court erred in denying McClease's motion to suppress the blunt and the bags of crack cocaine and marijuana.

¶ 23 Order **REVERSED**. Judgment of sentence **REVERSED**. Case **REMANDED** for further proceedings consistent with this Opinion. Jurisdiction **RELINQUISHED**.

¶ 24 OLSZEWSKI, J., notes his dissent.