**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANG HAI LE, | |
| Appellant | No. 677 MDA 2016 |

Appeal from the Judgment of Sentence of March 29, 2016
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0004628-2014

BEFORE:  PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                 **FILED FEBRUARY 16, 2017**

Appellant, Dang Hai Le, appeals from the judgment of sentence entered on March 29, 2016, following his jury trial convictions for possession with intent to deliver a controlled substance (PWID), two counts of possession of a controlled substance, two counts of manufacturing a controlled substance, conspiracy to manufacture a controlled substance, and theft of services.[1]  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  On September 10, 2014, police were conducting speed enforcement in Berks County, Pennsylvania when Steven Stinsky, the Chief of Police for the Fleetwood Police Department, registered Appellant driving 45 miles per

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 780-113(a)(30); 18 Pa.C.S.A. §§ 903 and 3926, respectively.

*Retired Senior Judge assigned to the Superior Court.

hour in a 25 mile per hour zone.  Chief Stinsky activated his overhead lights and siren.  Appellant pulled up to the pump at a gas station approximately one-half mile later.  When Chief Stinsky approached the vehicle, he smelled the strong odor of cologne.  Chief Stinsky asked Appellant several times for identification, registration, and proof of insurance.  Appellant avoided eye contact and rummaged through the center console of the vehicle.  He told Chief Stinsky that another officer had recently stopped him and he was looking for his license.  Appellant gave Chief Stinsky identification and a written warning previously issued to Appellant from the state police.

Chief Stinsky issued Appellant written motor vehicle citations.  Appellant asked if he could refuel his car.  Chief Stinsky told Appellant they were finished and that Appellant could do whatever he wanted.  Appellant, however, did not refuel his vehicle.  After approximately 20 seconds, Chief Stinsky walked back to Appellant's vehicle wherein he told Appellant he was concerned about guns and drugs.  Appellant disavowed possessing any weapons.  Chief Stinsky asked Appellant if he would consent to a search.  Appellant began opening suitcases that were located in the back seat.  Chief Stinsky told Appellant it would be safer for him to exit the vehicle and stated that if Appellant alighted from the vehicle, it indicated his permission for police to conduct the search.  Appellant got out of his car.  Upon executing a search, police uncovered 500 marijuana plant cuttings in a box.  Police arrested Appellant and secured search warrants to search his cellular phone,

GPS unit, and two residences. Thereafter, the Commonwealth charged Appellant as set forth above.

Following a two-day trial, a jury convicted Appellant on the aforementioned crimes. The trial court sentenced Appellant to an aggregate term of seven to 22 years of incarceration. This timely appeal resulted.[2]

On appeal, Appellant raises the following issues for our review:

A. Whether the lower court erred in denying [A]ppellant's motion for suppression of evidence where the Commonwealth did not meet its burden of establishing that alleged consent of [A]ppellant to search his vehicle was voluntary?

B. Whether the lower court erred in sentencing [A]ppellant to the sentencing guidelines for particular amounts/weights of a controlled substance where there was no finding of such facts by the jury and where Appellant ought to have been sentenced pursuant to the default grading and sentencing guidelines rather than pursuant to statutorily enhanced guidelines[?]

Appellant's Brief at 8 (superfluous capitalization omitted).

In his first issue presented, Appellant concedes that he initially challenged the validity of the vehicular stop in his suppression motion, but has abandoned that claim on appeal. *Id.* at 14. Instead, he argues that the

_____

[2] Appellant filed a timely post sentence motion that the trial court denied on April 1, 2016. On April 27, 2016, Appellant filed a notice of appeal. On April 28, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 9, 2016, Appellant complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on June 7, 2016. That opinion relied, in part, on a prior opinion filed on August 5, 2015 following the denial of Appellant's pretrial motion to suppress evidence.

trial court erred by concluding "the detention of Appellant was not continuous."[3] ***Id.*** Appellant avers "the record demonstrates that Appellant was plainly confused about whether his detention had ended, because he kept asking if he could refuel his car while he was being detained." ***Id.*** He suggests "[t]hroughout the entire encounter, multiple police vehicles exhibited flashing lights, a strong signal that a driver is not free to terminate the encounter." ***Id.*** As such, he argues that, "the encounter was equivocal" making it "unclear if Appellant made a knowing consent and if there was an apparent break in the detention." ***Id.*** However, Appellant concedes that his

---

[3] The issue presented to this Court varies slightly from the issue presented in Appellant's Rule 1925(b) concise statement of errors complained of on appeal. Upon review of his Rule 1925(b) statement, Appellant contended that the trial court erred in denying his suppression motion because "the Commonwealth did not meet its burden of establishing that any alleged consent of [A]ppellant to search his vehicle was voluntary." Rule 1925(b) Statement, 5/9/2016, at 1. Currently, Appellant is challenging the non-continuous nature of his detention by police as a reason to suppress evidence later recovered. Pennsylvania law makes clear that "when a consensual search is preceded by an illegal detention, the government must prove not only the voluntariness of the consent under the totality of the circumstances but must also establish a break in the causal connection between the illegality and the evidence thereby obtained." ***Commonwealth v. McClease***, 750 A.2d 320, 327 (Pa. Super. 2000) (internal citation, quotations, brackets, and ellipsis omitted). By challenging the continuity of the vehicular stop, Appellant is also challenging the validity of his consent. We conclude that this issue is fairly subsumed within the first issue raised in Appellant's Pa.R.A.P. 1925(b). Moreover, the trial court addressed all of Appellant's contentions regarding the validity of the initial traffic stop, the break in detention, and Appellant's subsequent consent in its opinion denying suppression filed on August 5, 2015.

"testimony at the pretrial hearing that he understood that he was free to go is powerful evidence for the Commonwealth." ***Id.***

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Jones***, 121 A.3d 524, 526–527 (Pa. Super. 2015) (internal citation and brackets omitted).

Our Supreme Court has determined that "after police finish processing a traffic infraction, the determination of whether a continuing interdiction constitutes a mere encounter or a constitutional seizure centers upon whether an individual would objectively believe that he was free to end the encounter and refuse a request to answer questions." ***Commonwealth v. Kemp***, 961 A.2d 1247, 1253 (Pa. Super. 2008), *citing* ***Commonwealth v.***

- 5 -

**Strickler**, 757 A.2d 884 (Pa. 2000). Appellant concedes that "at the pretrial hearing [he testified] that he understood that he was free to go" after the issuance of the traffic citation. Appellant's Brief at 14. Upon review of the record, we confirm that Appellant testified that he felt free to leave and knew he could refuse his consent to search the vehicle. N.T., 7/1/2015, at 41-43. As such, we discern no abuse of discretion or error of law when the trial court determined that "[f]rom this record, it is obvious that [Appellant] felt free to leave and to refuse to answer [Chief] Stinsky's questions." Trial Court Opinion, 8/5/2015, at 5. Accordingly, the trial court properly denied suppression and Appellant's first claim fails.

In his second issue presented, Appellant argues that the trial court sentenced Appellant using improper offense gravity scores based upon the number of marijuana plants and/or the particular weight of the marijuana seized. **Id.** at 15-17. Appellant claims error because the trial court denied his special interrogatory request that the jurors make factual findings regarding the weight and/or number of marijuana plants during deliberation. **Id.** at 15. He avers that "where different quantities of marijuana are found in different places with multiple persons allegedly possessing some or all of it, the particular facts become very important because of the large differences in the sentencing guidelines that can occur due to the weights or amounts involved." **Id.** at 17. Thus, he claims "a statutorily mandated increase in the guidelines where a particular fact is alleged creates a significant risk that a defendant will receive a higher sentence and therefore

implicates the consideration of *Alleyne v. U.S.*, 133 S.Ct. 2151 (2013)." *Id.* at 16.

"A challenge to an alleged excessive sentence is a challenge to the discretionary aspects of a sentence." *Commonwealth v. Ahmad*, 961 A.2d 884, 886 (Pa. Super. 2008) (citation omitted). Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Tukhi*, 149 A.3d 881, 888 (Pa. Super. 2016). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.*

Here, Appellant has complied with the first three procedural requirements. Appellant filed a post-sentence motion for reconsideration of his sentence, filed a timely notice of appeal, and set forth a statement pursuant to Pa.R.A.P. 2119(f) in his appellate brief. "An improper calculation of the offense gravity score affects the outcome of the sentencing recommendations, resulting in an improper recommendation, thereby compromising the fundamental norms which underlie the sentencing

- 7 -

process." ***Commonwealth v. Archer***, 722 A.2d 203, 210–211 (Pa. Super. 1998) (citation omitted).  Thus, Appellant has presented a substantial issue for our review.

However, we conclude that Appellant is not entitled to relief.  In ***Commonwealth v. Wolfe***, our Supreme Court stated that "[t]he effect of ***Alleyne***'s new rule was to invalidate a range of Pennsylvania sentencing statutes predicating **mandatory minimum penalties** upon non-elemental facts and requiring such facts to be determined by a preponderance of the evidence at sentencing." 140 A.3d 651, 653 (Pa. 2016) (emphasis added). Here, mandatory minimum sentences were not at issue.  Instead, the offense gravity score is an enhancement to the sentencing guidelines.   As this Court has also determined, "[i]f [a sentencing] enhancement applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range.   Therefore, [] the situation[] addressed in ***Alleyne*** [is not] implicated." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1270 n.10 (Pa. Super. 2014).   Hence, there is no legal authority for Appellant's suggestion that the jury was required to determine the weight of the marijuana plants recovered in order for the trial court then to assign an offense gravity score prior to sentencing.  We discern no abuse of discretion in denying Appellant relief on his discretionary sentencing claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/2017