J-A14044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUASHAWN LAFAYETTE PACLEY | : | |
| | : | |
| Appellant | : | No. 779 WDA 2020 |

Appeal from the Judgment of Sentence Entered March 3, 2020
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001058-2019

BEFORE:  MURRAY, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED: September 9, 2021

Quashawn Lafayette Pacley ("Pacley") appeals from the judgment of

sentence entered following his conviction of one count each of possession of

heroin, possession with intent to deliver heroin and possession of drug

paraphernalia.[1]  We reverse the judgment of sentence and discharge Pacley.

In its Pa.R.A.P. 1925(a) Opinion, the trial court set forth the facts

underlying this appeal as follows:

> On February 22, 2019, City of Erie Patrolman Dustin
> Landfried [("Officer Landfried")] and his partner, Patrolman
> Strauch [("Officer Strauch")], were conducting surveillance in an
> unmarked vehicle.[2]  As they patrolled the 500 block of East 6th
> Street, they passed a white Cadillac parked near the corner of East

---

[1] **_See_** 35 P.S. § 780-113(a)(16), (30), (32).

[2] In its Opinion denying Pacley's suppression Motion, the suppression court
found that the surveillance took place at approximately 2:50 p.m.
Suppression Court Opinion, 10/11/19, at 1.

6th Street and Wallace Street. Officer Landfried recognized the driver of the vehicle as Shyheem Pacley [("Shyheem")], who[m] the officer knew to be a suspended operator. Upon noting this, Officers Landfried and Strauch set up a surveillance position approximately [three-fourths] of a block west of the vehicle. Within five minutes, the Cadillac pulled away from the curb and drove south on Wallace Street. As they were in an unmarked vehicle and in plain[ ]clothes, Officers Landfried and Strauch could not effectuate a stop[,] so they radioed Sergeant Steve DeLuca [("Sergeant DeLuca")] and Officer Smith for backup. The officers then proceeded to follow the Cadillac to 431 West 29th Street, where it pulled into a driveway. Sergeant DeLuca arrived at 431 West 29th Street at the same time. Upon parking the Cadillac, Shyheem [] exited the vehicle and entered the residence at 431 West 29th Street[,] while the other occupants remained in the vehicle. Officer Landfried and Sergeant DeLuca approached the vehicle and found two passengers inside. Jermall Johnson [("Mr. Johnson" or "Johnson")] was identified as the passenger in the front seat, and [Pacley] was identified as the passenger in the right rear seat. Mr. Johnson was observed trying to discard a baggie of suspected marijuana. Based on this observation, Mr. Johnson and [Pacley] were removed from the vehicle and a temporary investigation commenced. In plain view on the right[-]side rear floor was a knotted baggie containing a brown powdery substance and an iPhone. Testing of the substance confirmed it to be heroin. Additionally, a black flip phone and approximately $1,300 cash were recovered from [Pacley]. [Pacley] was placed under arrest and transported to the police station for booking.

Trial Court Opinion, 11/24/20, at 1-2 (citations omitted, footnote added).

Pacley filed an Omnibus Pre-trial Motion ("Suppression Motion") seeking to, *inter alia*, suppress evidence seized from Pacley and his iPhone. Following a hearing, the trial court entered an Opinion and Order denying Pacley's Suppression Motion. **See** Trial Court Opinion and Order, 10/11/19.

The matter proceeded to a jury trial.[3]   A jury subsequently convicted Pacley of the above-described offenses.   On March 3, 2020, the trial court sentenced Pacley to two to four years in prison for his conviction of possession with intent to deliver heroin, followed by one year of probation for his conviction of possession of drug paraphernalia.[4]   Pacley timely filed post-sentence Motions seeking a judgment of acquittal and again challenging the denial of his Suppression Motion.   On February 12, 2020, the trial court denied Pacley's post-sentence Motions.   Thereafter, Pacley filed the instant timely Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Pacley raises the following claims for our review:

I.      Whether or not the trial court erred in denying [Pacley's Suppression Motion,] when S[ergeant] DeLuca[,] … with flashing lights and sirens activated, parked his police vehicle directly behind the right rear bumper of the vehicle in which [Pacley] was a back-seat passenger, thereby preventing the vehicle's egress from the private driveway in which it was parked, when the driver, suspected of driving without a license, had already departed the vehicle and entered the residence at 431 West 29th Street, Erie, Pa[,] upon arrival of the City of Erie Police, and the City of Erie Police did not have a reasonable suspicion based upon articulable facts that [Pacley], and/or the front seat passenger were engaged in criminal activity and/or probable cause to arrest [Pacley] and/or [the] front seat passenger?

II.     Whether or not the trial court erred in admitting into evidence the second page of [Pacley's] booking sheet under

_____

[3] Pacley and Shyheem were tried together but pursued separate appeals.

[4] Pacley's conviction of possession of heroin merged at sentencing.

- 3 -

the "Business Record Exception" to the Hearsay Rule[,] when it was clear that the document lacked "Trustworthiness" since certain items were written longhand and added to the page[,] whereas Items 1-9 were typed onto the page?

Brief for Appellant at 5-6 (emphasis and most capitalization omitted).

Pacley's first issue challenges the ruling of the suppression court. *See id.* at 23. In reviewing the propriety of a suppression order,

[o]ur standard of review … is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Galendez*, 27 A.3d 1042, 1045 (Pa. Super. 2011) (*en banc*) (citation omitted). "It is within the suppression court's sole province as fact-finder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Bush*, 166 A.3d 1278, 1282 (Pa. Super. 2017) (citation omitted).

Pacley claims that, by partially blocking the vehicle in the driveway, Sergeant DeLuca effectuated a seizure of the vehicle and its passengers, which was unsupported by reasonable suspicion or probable cause. Brief for Appellant at 23-24. Pacley challenges the suppression court's finding as to whether the marked police vehicle partially blocked the driveway, thereby effectuating the seizure of the vehicle and its occupants. *See id.* at 25-26.

Pacley points out that the suppression court did not render a finding as to whether Sergeant DeLuca's police vehicle partially blocked the subject vehicle, although the trial court did so in denying Pacley's post-sentence Motions. *Id.* at 25. According to Pacley, Sergeant DeLuca effectuated a seizure of the vehicle and its occupants, even though he had observed the suspected unlicensed driver leave the vehicle and enter a house. *Id.* at 26.

Pacley further challenges a finding by the suppression court that, as Sergeant DeLuca approached the house, he could smell marijuana emanating from the vehicle. *Id.* According to Pacley, Sergeant DeLuca never approached the house. *Id.* Rather, Sergeant DeLuca "approached the driver's side of the vehicle, with his gun drawn, shouting commands, after partially blocking the vehicle's egress with its lights and sirens activated." *Id.* Pacley argues that, at the time Sergeant DeLuca approached the vehicle, a seizure already had occurred. *Id.*

Finally, Pacley disputes the trial court's statement, in its Order denying post-sentence Motions, that Pacley could have walked away from the vehicle at any time. *Id.* at 27. Pacley argues that a reasonable person would not have felt free to leave, where a police vehicle had partially blocked the driveway with its lights and siren activated, and an officer was approaching the vehicle shouting and with his gun drawn. *Id.* at 26-27.

Our courts have long recognized three levels of interaction that occur between the police and citizens that are relevant to the analysis of whether a

particular search or seizure conforms to the requirements the Fourth Amendment to the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. *See* U.S. Const. amend. IV; P.A. Const. art. I, § 8.

> [I]n assessing the lawfulness of citizen/police encounters, a central, threshold issue is whether or not the citizen-subject has been seized. Instances of police questioning involving no seizure or detentive aspect (mere or consensual encounters) need not be supported by any level of suspicion in order to maintain validity. Valid citizen/police interactions which constitute seizures generally fall within two categories, distinguished according to the degree of restraint upon a citizen's liberty: the investigative detention or ***Terry***[5] stop, which subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of an arrest; and a custodial detention or arrest, the more restrictive form of permissible encounters.
>
> To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion; whereas, a custodial detention is legal only if based on probable cause. To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

---

[5] ***See Terry v. Ohio***, 392 U.S. 1 (1968).

*Commonwealth v. Strickler*, 757 A.2d 884, 889-90 (Pa. 2000) (internal citations and footnotes omitted, one footnote and paragraph break added).

As this Court has explained,

[e]xamples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Commonwealth v. McClease*, 750 A.2d 320, 324-25 (Pa. Super. 2000).

The evidence presented at the suppression hearing, viewed in a light most favorable to the Commonwealth, established the following. Officer Landfried testified that, during the afternoon of February 22, 2019, he was operating an unmarked police vehicle while in plain clothes. N.T., 8/9/19, at 52. While on patrol, Office Landfried observed Shyheem in a parked white Cadillac. *Id.* at 52-53. Because Officer Landfried knew Shyheem "to be a suspended operator[,]" the officer "sat down the street from the vehicle and departed the area and loosely follow[ed] it." *Id.* at 53. Officer Landfried testified that the vehicle "was trying to evade us, taking a roundabout route to see if we would follow the vehicle." *Id.* at 54. At that time, Officer Landfried notified other officers to ask for assistance. *Id.*

Officer Landfried observed that, after the vehicle pulled into a driveway, Shyheem exited the vehicle and entered the residence at 431 West 29th Street. *Id.* at 55. According to Officer Landfried, almost simultaneously as Shyheem entered the porch of the house, Sergeant DeLuca "made contact with the

- 7 -

vehicle in the driveway …, at which time I exited our unmarked vehicle and ran across 29th Street to assist S[ergeant] DeLuca." *Id.* at 56. Officer Landfried approached the vehicle's passenger side, while Sergeant DeLuca approached the vehicle from the driver's side. *Id.* at 55. At that time, Officer Landfried observed Johnson moving about in the front passenger compartment, attempting to discard a clear plastic bag containing suspected marijuana. *Id.* at 57. Officer Landfried testified that, at the same time, Sergeant DeLuca "was giving verbal commands" to Pacley and Johnson to "[k]eep their hands where we could see them and to quit reaching." *Id.* The officers then removed Johnson and Pacley from the vehicle." *Id.* Upon removing Pacley from the vehicle, Officer Landfried observed a clear, knotted plastic bag containing a brown, powdery substance, "which I commonly recognize[d] as heroin." *Id.* at 58. The officers moved to the front door after securing the vehicle's passengers. *Id.* at 59.

On cross-examination, Officer Landfried admitted that he observed no other traffic violations while following the white Cadillac. *Id.* at 68-69. According to Officer Landfried, at the time the vehicle parked at 431 West 29th Street, he had observed only one traffic violation. *Id.* at 69. Further, there were no indications of unlawful activity taking place at that address. *Id.* at 70.

Officer Landfried acknowledged that he recognized Pacley in the Cadillac, while it was driving near 18th and Ash Streets. *Id.* at 71. However,

Officer Landfried did not state this in his report, "[b]ecause we knew who the vehicle driver was. [Pacley] was not committing a violation at that time by riding with him." *Id.* at 71.

Sergeant DeLuca testified that, on February 22, 2019, he responded to a call to backup Officers Strauch and Landfried. *Id.* at 7-8. Sergeant DeLuca was informed that an unmarked police vehicle was following a vehicle occupied by Shyheem and Pacley, neither of whom had a driver's license. *Id.* at 8. Sergeant DeLuca stated that, through his work, he was aware that Shyheem and Pacley

> are known gang members of the Four Nation, the 7th Street Ward, also ABM, which is All About Money, [and] they are known to be carrying firearms in the city, known to be carrying large amounts of drugs [and] cash. This stuff is all information that was obtained through numerous watch group meetings, the different violent task force that was created throughout the city department.

*Id.* at 8-9. On cross-examination, however, when asked whether he knew Pacley was in the vehicle before he approached it, Sergeant DeLuca responded, "I don't recall." *Id.* at 22. Sergeant DeLuca explained, "The officers said there were other occupants. I don't remember how many. I was just trying to get up to the area." *Id.*

Sergeant DeLuca stated that, as he drove to the scene in his marked police cruiser, he activated his lights and siren. *Id.* at 8. According to Sergeant DeLuca,

> [a]s I was pulling behind the vehicle, Shyheem [] was on the porch of that residence and entering the front door. Again, I don't know the exact address. It was a left-hand door and had two individuals

still in the front passenger seat and one in the back seat. The front passenger was [] Johnson [], and in the back was [] Pacley.

*Id.* at 9. Sergeant DeLuca testified that, as he approached the vehicle, he observed "the stench of weed coming from the vehicle." *Id.* at 10.

Sergeant DeLuca further explained that, as he parked his police vehicle, he did not "block the vehicle. I was off to the side of it." *Id.* at 26. Regarding the driveway where the vehicle was parked, Sergeant DeLuca testified as follows:

Q. [Pacley's counsel:] So when you pull up, you pull in behind the vehicle, correct?

A. [Sergeant DeLuca:] Yes. I wasn't blocking it just in case I need to get out of there sooner.

Q. You were blocking it or weren't?

A. I didn't block the vehicle. I was off to the side of it.

Q. You indicated you're almost a quarter of the way behind it, correct?

A. It's not a quarter of the way, but, again, off the bumper.

Q. But you're off the bumper of the vehicle?

A. Correct.

Q. But that vehicle is parked in the driveway. It's not on the street at all?

A. Just blocking a little bit, but it's not on the street.

*Id.* at 26. Sergeant DeLuca later indicated that he turned off the police unit's lights and sirens upon arriving at the scene. *Id.* at 50. However, Sergeant DeLuca acknowledged that they could have been on as he pulled up to the

scene. *Id.* Sergeant DeLuca testified that, at the time of his arrival, Shyheem was almost entirely inside of the house at 431 West 29th Street. *Id.* at 30. Further, at the time Sergeant DeLuca arrived at the scene, Patrolmen Strauch and Landfried were present. *Id.* at 33. Officer Smith arrived at the scene within a few seconds. *Id.* Sergeant DeLuca did not believe that he drew his weapon when approaching the vehicle. *Id.* at 34.

Once at the vehicle, Sergeant DeLuca observed Johnson "attempting to get a bag from his front pants pocket, which turned out to be a decent-sized bag of marijuana, tried to discard that, and I asked him to put his hands on the dashboard, which he did comply [*sic*]." *Id.* at 10. Sergeant DeLuca observed Pacley making "furtive" movements towards his feet. *Id.* at 11. According to Sergeant DeLuca, "I advised Officer Landfried that [Pacley] was moving around a lot in the back, at which time he made the observation at that time." *Id.* at 11-12. Sergeant DeLuca explained that he "was making sure there was [*sic*] no weapons, but I couldn't see what [Pacley] was attempting to retrieve or discard." *Id.* at 12. After ordering Pacley and Johnson out of the vehicle, Sergeant DeLuca found suspected narcotics and a cell phone "[o]n the floorboard in front of [Pacley.]" *Id.*

In its Opinion denying Pacley's Suppression Motion, the suppression court found as follows:

> 8. Sergeant DeLuca testified that he had received a call from Officer Landfried. He followed the Cadillac as it parked in the driveway. He parked his vehicle as Shyheem entered the residence.

- 11 -

9. S[ergeant] DeLuca testified that the two Pacleys "were known gang members of the Four Nations" and "known to be carrying firearms."

10. After Shyheem [] went into the home, [] Johnson remained in the car in the front passenger seat and [] Pacley remained in the passenger-side back seat.

11. As S[ergeant] DeLuca approached the house and the Cadillac, he could smell marijuana coming from the vehicle. He saw through the car windows [] Johnson in the front seat trying to get a bag of marijuana from his pocket and discard it. S[ergeant] De[L]uca ordered him to put his hands on the dashboard.

12. In the passenger-side backseat, [] Pacley had his hands down near his feet on the car floor and was making furtive movements. S[ergeant] De[L]uca ordered him to put his hands on the seat in front of him.

13. S[ergeant] DeLuca did not believe his gun was drawn when he approached the Cadillac, but Officer Landfried believed S[ergeant] DeLuca's gun was drawn after S[ergeant] De[L]uca saw Johnson attempting to discard the marijuana.

Suppression Court Opinion, 10/11/19, at 2.

In denying the Suppression Motion, the suppression court opined as

follows:

As the officers arrived, they saw the driver enter the residence. **As they approached the residence and the vehicle to confront Shyheem,** [**Sergeant**] **DeLuca smelled marijuana coming from the vehicle. This observation provided the right to conduct an investigatory detention of the vehicle and its occupants.**

The police looked into the vehicle, where they saw [] Johnson trying to get rid of a bag of marijuana. This fact also contributed to the reasonable suspicion, as well as to probable cause. Therefore, the police had reasonable suspicion to order the two men out of the car to conduct a temporary investigation for possession of marijuana.

- 12 -

> Once they were out, the officers saw in plain view on the floor by [] Pacley's fee the bag of heroin. Since the officers had the reasonable suspicion necessary to temporarily detain the two men in the vehicle, they also had the right to be in a position to see inside the car. Thus, the seizure of the heroin, in plain view on the floor in the backseat, was proper.

Suppression Court Opinion at 5 (emphasis added).

Initially, we address the suppression court's finding that Sergeant DeLuca observed the smell of marijuana *while approaching the house*. Our review of the record, in a light most favorable to the Commonwealth, discloses no evidence to support a finding that Sergeant DeLuca first approached the house. As set forth above, Sergeant DeLuca testified that he observed the odor as he approached the vehicle. ***See*** N.T., 8/9/19, at 10.

Regardless, viewed in a light most favorable to the Commonwealth, we cannot conclude that Officer Landfried had reasonable suspicion to approach the vehicle, after the driver had entered the house. "The odor of marijuana alone, absent any other circumstances, cannot provide individualized suspicion of criminal activity[,] when hundreds of thousands of Pennsylvanians can lawfully produce that odor." ***Commonwealth v. Barr***, 240 A.3d 1263, 1287 (Pa. Super. 2020), ***appeal granted***, 252 A.3d 1086 (Pa. 2021).[6]

---

[6] The Supreme Court granted allowance of appeal limited to the following issues: "(1) What weight, if any, should the odor of marijuana be given in determining whether probable cause exists for a warrantless vehicle search,
*(Footnote Continued Next Page)*

We are aware that "[o]dor is a factor that can contribute to a finding of probable cause, assuming other circumstances supply more individualized suspicion that the activity is criminal." *Commonwealth v. Grooms*, 247 A.3d 31, 40 (Pa. Super. 2021). However, at the suppression hearing, Sergeant DeLuca and Officer Landfried expressed no other basis for approaching the vehicle.

Further, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person would have thought he was being restrained had he been in the defendant's shoes. *Strickler*, 757 A.2d 889. Here, Sergeant DeLuca and Officer Landfried approached the driverless vehicle, shouting instructions to the passengers. Pacley, as passenger in the vehicle, observed his driver leave the vehicle and a police unit arriving at the scene with its lights and siren activated, and further observed four officers at the scene, with two officers approaching their vehicle and issuing commands. Under these circumstances, the conduct of the police would have communicated to a reasonable person that he was not free to leave the scene. *See McClease*, 750 A.2d at 324-25.

---

in light of the enactment of the Medical Marijuana Act, 35 P.S. § 10231.101 *et seq.*?" and "(2) To what extent does this Court's decision in *Commonwealth v. Hicks*, 652 Pa. 353, 208 A.3d 916 (Pa. 2019), apply to probable cause determinations involving the possession of marijuana following the enactment of the Medical Marijuana Act, 35 P.S. § 10231.101[,] *et seq.*?" *Barr*, 252 A.3d 1086.

Further, our review of the record discloses that the officers offered no other reason for their approach of the vehicle. Because there was no reasonable suspicion underlying the investigative detention of Pacley, a passenger in the vehicle, we are constrained to reverse the Order of the suppression court. **See Barr**, 240 A.3d at 1287.

We next determine the appropriate remedy. "Evidence obtained as a result of an unlawful search is subject to the fruit of the poisonous tree doctrine. The United States Supreme Court has stated that any material, tangible, or verbal evidence 'obtained either during or as a direct result of an unlawful invasion' is inadmissible at trial." **Commonwealth v. Chesney**, 196 A.3d 253, 258 (Pa. Super. 2018) (quoting **Wong Sun v. United States**, 371 U.S. 471, 485 (1963)).

Our review discloses that all evidence seized from Pacley, and all of the charges against him, resulted from the unlawful investigative detention and are "fruit of the poisonous tree." **See id.** Accordingly, we are further constrained to reverse Pacley's judgment of sentence and discharge him as to the above-described offenses. **See id.**[7]

Suppression Order reversed. Judgement of sentence vacated and Pacley is discharged. Superior Court jurisdiction relinquished.

---

[7] Based on our disposition, we need not address Pacley's second claim.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/9/2021