**COMMONWEALTH of Pennsylvania,
Appellant,**

v.

**John MULHOLLAND, Appellee.**

Superior Court of Pennsylvania.

Submitted Jan. 7, 2002.
Filed March 7, 2002.

Francesco L. Nepa, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellant.

Kim W. Riester, Pittsburgh, for appellee.

Before DEL SOLE, P.J., HUDOCK and CAVANAUGH, JJ.

CAVANAUGH, J.

¶ 1 Appellant Commonwealth appeals the June 4, 2001, order granting Appellee John Mulholland's motion to suppress physical evidence seized from appellee by the arresting officer[1]. We affirm.

¶ 2 The record reveals that on January 23, 2000, Officer Richard Lamb of the Collier Township Police Department was on routine patrol. Collier Township is a rural community with little crime, and the officer had no recent reports of suspicious activity. At roughly 6:30 in the evening, Officer Lamb observed an unmoving conversion van in the parking lot of the abandoned Roadway Tavern. The lot was partially lit by streetlights, and the van's running lights were activated. To his knowledge, the van had not violated any portion of the Motor Vehicle Code. Upon noticing the van, Officer Lamb decided to "... [check] to see if everything was all right." The officer pulled his cruiser into the lot and parked in front of the van, with the purpose of blocking its means of egress. He later testified that "if [the van] would have pulled out, I would have simply performed a traffic stop and stopped him..." Officer Lamb turned on his cruiser's alley lights and approached the van. The officer testified that the driver of the van at no time made any sudden or furtive movements. Officer Lamb asked the driver if he was okay, and the driver explained that he was waiting for someone. Officer Lamb then recognized the driver as Mulholland, a township resident. While speaking to Mulholland, the officer detected the odor of burnt marijuana. There was no sign of recent use, such as smoke, and Mulholland was not visibly impaired. Mulholland admitted he had previously smoked a "joint," or marijuana cigarette. Officer Lamb requested Mulholland's consent to search the van for contraband. Mulholland, instead of answering directly, held up his dashboard ashtray for the officer to view and stated he was searching for a "roach," or cigarette stub. No marijuana was found in the ashtray.

¶ 3 The officer then spied a fanny-pack belted around Mulholland's waist. He ordered Mulholland out of the van in order to submit to a weapons search. At the time he initiated the search, the officer had no reason to believe Mulholland possessed a weapon, in the fanny-pack or otherwise.[2] A search of Mulholland's person revealed no weapons or contraband. A search of

---

1. In accordance with *Commonwealth v. Dugger*, 486 A.2d 382, 386 (Pa.1985) and Pa. R.A.P. 311(d) and 904(e), the Commonwealth has certified that the suppression order "... substantially handicaps and/or effectively terminates prosecution of appellee..." and that the instant appeal is taken in good faith.

2. Officer Lamb testified that one motive for conducting a weapon search was information received by the police department that Mulholland had sold drugs. This information was two years old at the time of the incident, and concerned activities which had allegedly occurred more than a decade prior to the incident.

the pack revealed an opaque pill bottle. Upon discovering the pill bottle, Officer Lamb placed Mulholland under arrest. The bottle was later found to contain cocaine. After his arrest, after a tow-truck had been summoned to impound the van, and after a second police officer had arrived on the scene, Mulholland agreed to a search of his vehicle. The search turned up an additional quantity of cocaine, as well as a marijuana cigarette roach. Police officers later obtained a warrant to search Mulholland's home, and discovered further quantities of controlled substances.

¶ 4 Following his arrest, Mulholland was charged with four drug-related offenses.[3] A preliminary hearing was held on February 28, 2000, and he was bound over for trial. Mulholland filed an omnibus pretrial motion in which he sought to suppress physical evidence seized and statements given on the basis that they were obtained via an investigative detention not supported by reasonable suspicion, and therefore illegal.

¶ 5 On February 9, 2001, an evidentiary hearing was held on Mulholland's motion to suppress. At the hearing, the Commonwealth presented its sole witness, Officer Lamb. On June 4, 2001, the lower court issued an order granting Mulholland's motion to suppress, citing the illegal nature of the detention.

¶ 6 The Commonwealth now appeals, and raises the following issue for our consideration:

WHETHER THE LOWER COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS BASED ON ITS CONCLUSION THAT THE INTERACTION BETWEEN OFFICER LAMB AND THE APPELLEE WAS AN INVESTIGATIVE DETENTION, THUS REQUIRING A REASONABLE SUSPICION BY THE OFFICER THAT THE APPELLEE WAS ENGAGING IN CRIMINAL ACTIVITY?

▪ ¶ 7 The applicable standard of review in a Commonwealth appeal from an order of suppression is well-settled. We "... must first determine whether the factual findings are supported by the record, and then determine whether the inferences and legal conclusions drawn from those findings are reasonable." *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 90 (1999) (citing *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190 (1997)). We may "... consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted." *Commonwealth v. Carter,* 779 A.2d 591, 592–93 (Pa.Super.2001) (quoting *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879, 880–81 (1998)). When "... the evidence supports the suppression court's findings of fact..., this Court may reverse only when the legal conclusions drawn from those facts are erroneous." *Commonwealth v. Carter,* 779 A.2d at 593 (quoting *Commonwealth v. Valentin,* 748 A.2d 711, 713 (Pa.Super.2000)).

▪ ¶ 8 There exist three levels of interactions between citizens and police officers under our Fourth Amendment jurisprudence:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "inves-

---

**3.** The violations alleged were: one count of possession of a controlled substance, 35 Pa. C.S.A. § 780–113(a)(16); one count of possession with intent to deliver a controlled substance, 35 Pa.C.S.A. § 780–113(a)(30); two counts of possession of drug paraphernalia, Pa.C.S.A. § 780–113(a)(32).

tigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Phinn,* 761 A.2d 176, 181 (Pa.Super.2000) (quoting *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (citations and footnotes omitted)).

¶ 9 In the instant case, the lower court found that the initial interaction between Officer Lamb and Mulholland was an investigative detention. An investigative detention, as it "... has elements of official compulsion...," demands that the police officer have a 'reasonable suspicion' of unlawful conduct on the part of the detainee. *See Commonwealth v. DeHart,* 745 A.2d 633, 636 (Pa.Super.2000). In its opinion, the court wrote that "The specific and articulable facts observed by Officer Lamb are insufficient to conclude that he possessed the requisite reasonable suspicion that Mr. Mulholland was engaged in criminal activity." The Commonwealth, however, argues that the lower court erred in finding that Officer Lamb subjected Mulholland to an investigative detention upon pulling into the parking lot of the Roadway Tavern. Rather, it states, the contact between the two men was no more than a mere encounter.

¶ 10 For our purposes, then, the key is to distinguish between a mere encounter and an investigative detention. In *Commonwealth v. McClease,* 750 A.2d 320, 324 (Pa.Super.2000), we sought to clarify the differences between these two levels of interaction:

In determining whether [an interaction should be considered a mere encounter or an investigative detention],

the focus of our inquiry is on whether a "seizure" of the person has occurred. *Commonwealth v. Mendenhall,* ... 552 Pa.484, 715 A.2d 1117, 1120 (1998). Within this context, our courts employ the following objective standard to discern whether a person has been seized: "[W]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave." *Commonwealth v. Smith,* 732 A.2d 1226, 1232 (Pa.Super.1999)... Thus, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *United States v. Kim,* 27 F.3d 947, 950 (3d Cir.1994).

If a given incident is found to have been an investigative detention, the Commonwealth must have demonstrated that the officer's decision to detain was supported by reasonable suspicion:

[A]n investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational interference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion.

*Commonwealth v. McClease,* 750 A.2d at 325 (quoting *Commonwealth v. Hall,* 558 Pa. 16, 735 A.2d 654, 659 (1999)).

¶ 11 Taking into consideration all of the circumstances surrounding the instant incident, we conclude that the evidence would clearly support the finding that Mulholland's interaction with the police was from its inception an investigative detention unsupported by a reasonable, articulable belief that Mulholland was engaged in criminal activity. The facts show that a uniformed police officer was on patrol in a marked police cruiser in a low-crime, rural area during the early evening. The appellee was parked in a lighted parking lot

with his running lights on, and was visible from the road. The officer testified that he had no knowledge that the van had violated any portion of the Motor Vehicle Code. The officer also stated that he had no information which would lead him to suspect the van's driver, or any other person in the area, of criminal activity. The officer, determined to investigate, parked his cruiser in such a fashion as to make it difficult if not impossible for the van to leave the parking lot. Before exiting his cruiser, the officer shone bright, spotlight-like lights in the direction of the van. The driver of the van made no sudden or furtive movements at any time during the encounter. When questioned by the officer, the driver replied that he was fine, and provided the officer with a not unreasonable reason for his presence. Only after such questioning did the officer notice the scent of marijuana and have a reasonable basis for suspecting that criminal activity was afoot. By that time, Officer Lamb had already subjected Mulholland to a period of illegal detention without such reasonable basis for suspicion.

¶ 12 As a basis for comparison, we offer a portion of our opinion from *Commonwealth v. McClease*, 750 A.2d at 326, in which we sought to deal with the elusive question, what quantum of suspicion is reasonable suspicion? In this passage, we compared the facts in *McClease* with the facts in *Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030 (1992):

> As the defendant in *DeWitt*, McClease was stopped late at night in an area that had previous reports of criminal activity. Prior to the stop, [police] noticed McClease sitting in his car with his head down as if he were looking at his hands. Similar to the defendant in *DeWitt*, McClease was observed making furtive movements. In *DeWitt*, our Supreme Court held that these factors are not sufficient to establish reasonable suspi-

cion. Moreover, in *DeWitt*, in addition to the foregoing factors, the defendant attempted to flee. Notwithstanding the presence of this additional bolstering factor for reasonable suspicion, the Court still found the evidence insufficient... Therefore, applying our Supreme Court's jurisprudence to the facts of the instant case, we are compelled to conclude that the specific and articulable facts... are insufficient... the stop of McClease was illegal.

The factual differences between the instant case and *McClease* and *DeWitt* are striking. As the record makes clear, the quantum of justifiable suspicion in the present case is far lower than in either *McClease* or *DeWitt*, cases where reasonable suspicion was not found to exist. We affirm the trial court's grant of Mulholland's motion to suppress.

¶ 13 Order affirmed.