J-A24026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KASHIF M. ROBERTSON | : | |
| | : | |
| Appellant | : | No. 1606 MDA 2017 |

Appeal from the Judgment of Sentence Entered August 16, 2017
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0002594-2016

BEFORE: OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED FEBRUARY 05, 2019**

Kashif M. Robertson appeals from the judgment of sentence entered following his convictions for fleeing and eluding a police officer, possession of drug paraphernalia, driving on a sidewalk, failure to stop at stop sign, and failure to signal.[1] He challenges the denial of his motion to suppress, the sufficiency of the evidence, and the court's instructions to the jury. We affirm.

Police arrested and charged Robertson with the above crimes in March 2016, and Robertson filed a motion to suppress. The trial court held a hearing on the motion at which the Commonwealth presented the following evidence.

Harrisburg City Police Officer Robert Fleagle testified that at approximately 3:45 a.m. on March 14, 2016, he was on patrol in a police SUV with Officer Angel Diaz. N.T. (Suppression Hearing), 6/22/17, at 9, 18. Both

___

[1] **See** 75 Pa.C.S.A. § 3733(a); 35 P.S. § 780-113(a)(32); and 75 Pa.C.S.A. §§ 3703(a), 3323(b), and 3334(a), respectively.

officers were in full uniform. ***Id.*** at 9. As they were driving down a narrow two-way street with cars parked on both sides, they noticed a car parallel-parked on the opposite side of the street with two motionless occupants. ***Id.*** at 10, 20-21, 28. Both Officer Fleagle and Officer Diaz testified that the person sitting in the driver's seat, later identified as Robertson, appeared to be sleeping. ***Id.*** at 10, 21, 28-29, 38, 45-46. Both officers also testified that there were no lights on in the car, and that they did not initially notice whether the car was running. ***Id.*** at 16, 29, 44.

Officer Fleagle testified that "in [his] 18 years as a patrolman for Harrisburg City, [the police have] had numerous situations that could be somebody with a health issue, somebody may be just asleep, maybe a DUI, [or that] somebody might be dead." ***Id.*** at 11. He also said that the police have encountered "people who are actually shot in vehicles before, [and we] came across them that they were dead in the vehicle." ***Id.*** Officer Fleagle stated that he and Officer Diaz therefore "wanted to check on their welfare and see what was going on." ***Id.*** He elaborated,

> we didn't know if it was medical, if he's just asleep or if it's a DUI. I mean, let's be honest. I'm looking for criminal activity at that time, I'm not going to, you know, lie to you. But, you know, I didn't know if he was – if something was wrong with him or if they were just drunk, high, or just sleeping.

***Id.*** at 23-24.

Officer Fleagle pulled the police SUV alongside the driver's side of the parked car, leaving two or three feet of space between the vehicles. ***Id.*** at 10,

18. Both officers testified that the placement of the SUV blocked Robertson's car from leaving. *Id.* at 12, 19, 23, 43.

Officer Fleagle shined a floodlight inside the car and confirmed that both occupants were asleep. *Id.* at 10, 23.[2] Robertson's seat was leaning partially backward, and the passenger, a woman, had leaned her seat all the way back. *Id.* at 10, 29. Robertson and the passenger awoke. *Id.* at 11, 23. Officer Fleagle lowered his window and asked Robertson if he was okay. *Id.* at 11, 23-24. According to Officer Fleagle, Robertson stared blankly at him, with a "thousand-yard stare," and did not lower his window. *Id.* at 11. Officer Diaz similarly testified that "they both looked towards us with a thousand-yard stare. They had, like, a surprised look on their face[s] and were very slow with their movements." *Id.* at 29. Officer Diaz concluded that "they appeared to be under the influence of drugs or something," and that "from the way they looked over to me, I believed them – from my experience at the time that they might be – at least the driver might be under the influence." *Id.* at 29, 43. This assessment took "no longer than a minute." *Id.* at 43.

Because the officers suspected that the occupants might be under the influence of drugs and alcohol, Officer Diaz decided they should investigate further. *Id.* at 32, 44-45. Officer Fleagle then backed up the police SUV so that the front of its bumper was in line with the front of Robertson's car. *Id.*

---

[2] Officer Fleagle also testified that he first observed the female passenger once he turned the floodlight on, contradicting his earlier testimony that he had initially seen two people in the car. N.T. (Suppression) at 29.

at 12, 24. The officers' vehicle continued to block Robertson's car from leaving, and Officer Fleagle testified that Robertson was not free to leave at that time. *Id.* at 24-26.

While Officer Diaz walked to the rear of the car, Officer Fleagle approached Robertson's driver's-side window on foot, tapped on the window, and asked Robertson again if he was okay. *Id.* at 12. Officer Fleagle testified that both Robertson and the female passenger "had a blank look on their face, kind of confused, moving slow." *Id.* at 12. Officer Fleagle asked Robertson to lower his window, and Robertson lowered it three inches. *Id.* at 12, 25. Officer Fleagle asked Robertson for identification, and Robertson "just looked at [him]" and "was fumbling around." *Id.* at 12. Officer Fleagle also stated that Robertson "seemed lethargic, confused, he had a blank stare on his face, and he was fumbling at one point when I asked him for his ID." *Id.* at 14, 25. Robertson never said "one word" to Officer Fleagle, but did produce an ID. *Id.* at 13-15, 25. Both officers testified that it was around this time that they smelled the odor of burnt marijuana emanating from inside the vehicle. *Id.* at 12, 25, 32-33.

Officer Fleagle stepped away to investigate Robertson's identification. *Id.* at 25. Officer Diaz approached the drivers' window, and asked Robertson and the passenger if they were on probation or parole; they responded in the negative. *Id.* at 33. Officer Diaz asked the passenger for an ID, but she said she did not have one with her. *Id.* at 33. Officer Diaz testified that he asked Robertson if he had recently smoked marijuana, and Robertson said that he

had not. *Id.* at 33. Officer Diaz told Robertson that he could smell it, and Robertson admitted to smoking "at least one marijuana cigarette." *Id.* at 33. Robertson spoke using only one or two words, not full sentences. *Id.* at 34. According to Officer Diaz, Robertson was moving slowly, with bloodshot eyes, and continually reached for his left waistband. *Id.* at 33-34. Officer Diaz testified that he shined a flashlight into the car, and saw a clear plastic baggie containing what appeared to be marijuana. *Id.* at 34. Officer Diaz then asked Robertson to give him the bag, and when he did, Officer Diaz placed it atop the car. *Id.* at 15, 34-35. Officer Diaz also observed a black scale next to the gearshift. *Id.* at 35. During his interactions with Robertson, Officer Diaz noticed that Robertson's car was running, because he could see occasional exhaust fumes. *Id.* at 34.

Officer Diaz asked Robertson to step out of the vehicle. *Id.* at 37. Instead of complying, Robertson started to close the window. *Id.* at 37. Officer Diaz told Robertson that if he did not stop, he would smash the window. *Id.* at 37. Robertson continued rolling up the window, and Officer Diaz shattered it. *Id.* at 37. Robertson then put the car in reverse and backed onto the sidewalk, almost striking Officer Fleagle, and drove away. *Id.* at 16, 35-36, 49. Officer Fleagle never heard Robertson start the car before reversing. *Id.* at 16.

A third police officer, John Rosinski, who was just arriving at the scene, pursued Robertson's fleeing vehicle. *Id.* at 36, 49. Officer Rosinski testified that Robertson ignored stop signs, failed to signal, and drove at a high rate of

speed. *Id.* at 49-50. Eventually, the car came to a stop at a dead end, and Robertson jumped out and fled on foot. *Id.* at 50. Officer Rosinski yelled to the female passenger to stay in the vehicle and chased Robertson on foot, but lost sight of him. *Id.* When Officer Rosinski returned to the vehicle, the passenger was no longer there. *Id.* Inside the vehicle, in plain view, he saw another bag of suspected marijuana on the driver's seat; a small digital scale on the floor; and scattered pieces of mail addressed to Robertson on the backseat. *Id.* at 50, 52-53.

The court denied Robertson's motion to suppress, and Robertson proceeded to a jury trial. At trial, which took place on August 16, 2017, the Commonwealth presented the testimony of the three police officers and introduced into evidence the two plastic bags of marijuana. N.T. (Trial), 8/16/17, at 35. The parties stipulated that the bags contained in all 0.27 grams of marijuana. *Id.* at 36-37. The prosecution did not introduce the digital scale into evidence. Robertson testified in his own defense, and argued that he fled from the police to protect himself and his passenger from danger, after Officer Diaz shattered his window with the handle of a firearm. *Id.* at 80.

After the close of evidence and arguments, the court instructed the jury. Because Robertson had argued that he was justified in fleeing from the police in self-defense, the court instructed the jury on the "justification defense," in relation to the charge of fleeing and eluding an officer. *Id.* at 120-22. The court explained,

conduct the actor reasonably believes to be necessary to avoid an imminent harm or evil to himself or another is justifiable if [(1)] the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[,] and (2) the [statute defining the offense does not] provide[] exceptions or defenses dealing with the specific situation involved[,] and a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

*Id.* at 121-22. Robertson did not object.

After deliberating for approximately one hour, the jury asked the court to repeat the elements of fleeing and eluding a police officer. *Id.* at 129. The court reinstructed the jury on the elements of that crime, but did not reinstruct on the justification defense. *Id.* at 129-30. Robertson objected, and the court explained that it did not reinstruct the jury on the justification defense because the jury had only asked for the elements of fleeing and eluding, and not justification. *Id.* at 132.

The jury found Robertson guilty of fleeing and eluding an officer and possession of drug paraphernalia. The trial court then found Robertson guilty of the summary offenses of driving on a sidewalk, failure to stop at stop sign, and failure to signal, but acquitted him of driving under the influence of a controlled substance. The court then immediately sentenced Robertson to a total of eight to twenty-three months' incarceration followed by 12 months' probation.

On September 1, 2017, the trial court docketed receipt of Robertson's post-sentence motion. The motion was stamped as received by the Dauphin County Clerk of Courts on August 29, 2017, and dated as mailed by Robertson

from prison on August 25, 2017. The court denied the motion on September 27, 2017, and Robertson filed a notice of appeal on October 10, 2017.

Robertson raises the following issues:

I. Did not the court err in denying [Robertson's] Motion to Suppress when the police effected a seizure of [Robertson's] person under Article 1, Section 8, of the Pennsylvania Constitution without reasonable suspicion and when [Robertson's] subsequent flight and discarding of evidence is deemed not to constitute an abandonment under Article 1, Section 8, of the Pennsylvania Constitution?

II. Was not the evidence insufficient to sustain a conviction for the offense of possessing drug paraphernalia?

III. Did not the court err in failing to re-instruct the jury on the defense of justification when it re-instructed the jury on the elements of the offense of fleeing and eluding?

Robertson's Br. at 6.

On November 13, 2017, while this appeal was pending, Robertson filed in this Court an "Application to Acknowledge August 25, 2017, as Date of Filing of Post-Sentence Motion Pursuant to 'Prisoner Mailbox Rule.'" According to Robertson, the deadline for him to file his post-sentence motion was August 28, 2017. *See* Pa.R.Crim.P. 720(1) (allowing defendant ten days from date of sentencing to file post-sentence motion); 1 Pa.C.S.A. § 1908 (providing that when the last day of a period falls on a Saturday, Sunday, or holiday, it is excluded from the computation of time). He asserts that he mailed his post-sentence motion *pro se* from prison on August 25, 2016, and points out that the trial court's noting receipt of the motion on August 29 proves that he could have mailed it no later than August 28, the due date. Robertson therefore

argues that his motion should be deemed timely pursuant to the prisoner mailbox rule. **See** Pa.R.A.P. 121(a) (providing that mailings from *pro se* defendants in prison are deemed filed on the date that they are given to prison authorities for mailing). The prisoner mailbox rule is clearly applicable to Robertson's mailing, and we therefore grant Robertson's application.

The more difficult question is whether the trial court properly entertained his *pro se* post-sentence motion, such that Robertson's Notice of Appeal was timely. It is unclear from the certified record whether Robertson had counsel when he submitted his *pro se* motion, and a trial court generally may not consider the *pro se* filings of a represented party. **See Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa. 2010) (stating *pro se* filing of a represented defendant was a "legal nullity").

Although Robertson had sought to represent himself at the outset of this case, by the time of trial, he was represented by counsel, and counsel filed a Pa.R.A.P. 1925(b) statement and appellate brief. Nothing in the certified record suggests that Robertson knowingly, intelligently, and voluntarily waived counsel for purposes of post-sentence motions. Nonetheless, the trial court apparently did not think his post-sentence motion was a "legal nullity" and ruled on it on the merits. Robertson relied on the entry of the order disposing of that motion as triggering the 30-day clock for him to file an appeal.

It thus appears from the certified record that either Robertson improperly lacked counsel at the post-sentence motion stage, or the trial

court's ruling on his motion misled him about the deadline for him to file his appeal. Notably, neither the trial court nor the Commonwealth is of the opinion that Robertson improperly engaged in hybrid representation such that his appeal is untimely. Under the circumstances presented here, we will deem Robertson's appeal to be timely. *See Commonwealth v. Leatherby*, 116 A.3d 73, 79 (Pa.Super. 2015) (*en banc*).

## I. Suppression

In his first issue, Robertson argues that the police seized him when they first blocked his car and shined a floodlight in his eyes. Robertson contends that the seizure violated his rights under the federal and state Constitutions because the police did not have reasonable suspicion at that time that he was committing a crime. According to Robertson, when the officers blocked his car, all they observed was someone sleeping in a legally parked car, who was awakened by a floodlight. He argues that there were no signs of criminal activity, such as indications that Robertson had recently been driving the car or that the motor was running. Robertson argues that because the seizure was illegal, the evidence recovered thereafter, including the bags of marijuana that Robertson discarded, should be suppressed as tainted by the illegal detention. *See* Robertson's Br. at 33-35. Robertson further argues that the seizure cannot be supported by the "community caretaking" exception to the warrant requirement, because the police "lacked any objective basis to believe" that Robertson "needed assistance." *See* Robertson's Reply Br. at 10.

We review the denial of a motion to suppress to determine whether the certified record supports the factual findings of the suppression court, and reverse only if there is an error in the legal conclusions drawn from those factual findings. **Commonwealth v. Gould**, 187 A.3d 927, 934 (Pa.Super.), *appeal denied*, 194 A.3d 1040 (Pa. 2018). Our standard of review of the trial court's legal conclusions is *de novo*, and the scope, plenary. **Commonwealth v. Wilmer**, 194 A.3d 564, 567 (Pa. 2018).

A warrantless seizure by the police violates a citizen's constitutional rights unless it is a brief detainment based on "reasonable suspicion that the individual is or is about to be engaged in criminal activity" or qualifies under certain established exceptions to the warrant requirement. **Id.** at 568. Police interaction with a citizen rises to the level of a detainment or seizure when, under an objective consideration of the circumstances, a reasonable person would not believe he or she was free to leave. **Commonwealth v. Mulholland**, 794 A.2d 398, 401 (Pa.Super. 2002). It is settled that a seizure occurs when uniformed police purposefully park their vehicle in such a way as to block the path of an occupied vehicle. **See Gould**, 187 A.3d at 936-37 & n.9; **Mulholland**, 794 A.2d at 402.

Here, the uncontradicted evidence established that Robertson's vehicle was unable to legally exit its parking space when the police pulled their SUV alongside of it, shined the floodlight inside, rolled down the window, and asked Robertson if he was all right. It was therefore at this moment that Robertson was detained for purposes of our analysis. **See Gould**, 187 A.3d at 936-37 &

n.9; *Mulholland*, 794 A.2d at 402. The trial court concluded that the police had reasonable suspicion to support an investigatory detention after this initial interaction. *See* Trial Court Opinion, filed, 12/15/17, at 8-9. However, we may affirm the trial court on any basis. *See Commonwealth v. Clouser*, 998 A.2d 656, 661 n.3 (Pa.Super. 2010). Our *de novo* review leads us to the conclusion that the officers' actions were justified under the public servant exception.

The public servant exception to the warrant requirement falls under the umbrella of the "community caretaking doctrine." *Wilmer*, 194 A.3d at 568-69. Our Supreme Court has deemed this exception to apply when police officers are "able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance." *Commonwealth v. Livingstone*, 174 A.3d 609, 634 (Pa. 2017). The resulting actions of the police "must be independent from the detection, investigation, and acquisition of criminal evidence" and "must be tailored to rendering assistance or mitigating the peril." *Id.* at 635. However, as the standard is an objective one, "a coinciding subjective law enforcement concern by the officer will not negate the validity of that search under the public servant exception to the community caretaking doctrine." *Id.* at 637. The reasonableness inquiry must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving," and take into consideration "that a combination of events each of which is mundane when viewed in isolation may paint an alarming picture." *Commonwealth v. Coughlin*, --- A.3d ----, 2018

PA Super 304, at 4 (Nov. 14, 2018) (*en banc*) (quoting **Commonwealth v.**
**Ford**, 175 A.3d 985, 990 (Pa.Super. 2017), *appeal denied*, 190 A.3d 580 (Pa.
2018)).[3]

Here, Officer Fleagle testified that when he saw Robertson, who was
leaning back and motionless in his car at 3:45 a.m., he was concerned, based
on his 18 years' experience as a police officer in Harrisburg, that Robertson
might be sick, might be dead, or might be under the influence of an intoxicant
that would prevent him from safely driving. N.T. (Suppression) at 11, 23-24.
We conclude that these are "specific, objective, and articulable facts that
would reasonably suggest to an experienced officer that a citizen is in need of
assistance." **Livingstone**, 174 A.3d at 634–37. Accordingly, Officer Fleagle
pulled the police SUV alongside the car and shined a light inside. Under the
circumstances, we hold that this action was sufficiently tailored to further
investigate whether the occupants needed aid.

---

[3] As our Supreme Court acknowledged:

> The modern police officer is a jack-of-all-emergencies, with
> complex and multiple tasks to perform in addition to identifying
> and apprehending persons committing serious criminal offenses;
> by default or design he is also expected to aid individuals who are
> in danger of physical harm, assist those who cannot care for
> themselves, and provide other services on an emergency basis.
> To require reasonable suspicion of criminal activity before police
> can investigate and render assistance in these situations would
> severely hamstring their ability to protect and serve the public.

**Livingstone**, 174 A.3d at 628-29 (quoting **Williams v. State**, 962 A.2d 210,
216 (Del. 2008)) (internal quotation marks omitted).

Officer Fleagle testified that during the interaction that followed, while he was shining the floodlight into the car, Robertson stared at him blankly, with a "thousand-yard-stare," did not lower his window, and did not answer when Officer Fleagle asked if he was all right. N.T. (Suppression) at 11. Officer Diaz also testified that Robertson and his passenger both had a "thousand-yard stare," and were "very slow with their movements." *Id.* at 29. "[F]rom the way [Robertson and the passenger] looked at [him]," Officer Diaz believed the occupants to be intoxicated. *Id.* at 29, 43. These uncontradicted facts reasonably suggested that the car's occupants may have needed assistance and that further investigation was warranted. Thus, the police parked their car and attempted to further engage Robertson, to determine whether he and the passenger were all right.

Although the trial court credited the officers' testimony that their investigation was motivated by the desire to check on the welfare of the car's occupants, *see* Trial Ct. Op. at 5, 9, the credibility of their subjective intent of the officers is not relevant to the objective reasonableness query. *Livingstone*, 174 A.3d at 637. Nor does the fact that the law enforcement officers expressed a coinciding objective to search for signs of criminal activity negate the reasonableness of their actions in this scenario. *Id.* Obviously, rending assistance to a person incapacitated by drug use may result in the discovery of evidence of crimes such as drug possession or driving under the influence. That the police may discover such evidence in addition to offering

assistance does not negate the obvious concern that a person debilitated by drug use may need immediate medical attention.

Robertson does not contest that after the police officers parked, exited their vehicle, and tapped on his window, the officers' interactions did not render the necessary reasonable suspicion or probable cause to support their further detainment of Robertson. Thus, we affirm the trial court's denial of Robertson's suppression motion.

## II. Sufficiency

In his second issue, Robertson argues that the plastic bags containing marijuana were insufficient evidence to support a conviction of possession of drug paraphernalia. Robertson cites ***Commonwealth v. Miller***, 130 A.3d 1 (Pa.Super. 2015), in which we held that the burnt paper wrapping of a single joint of marijuana did not constitute paraphernalia. Robertson further argues that there was insufficient evidence to prove that Robertson possessed the digital scale found in his vehicle, which was observed in the common area of the vehicle, between him and the passenger. Robertson states that his mere knowledge of the presence of the contraband was insufficient to prove he constructively possessed it. ***See*** Robertson's Br. at 38-41.[4]

A challenge to the sufficiency of the evidence will not prevail when the trial evidence, "and all reasonable inferences drawn from that evidence, when

---

[4] Robertson does not argue that the evidence was insufficient because the officers did not introduce the scale as physical evidence at trial, or assert that the scale did not qualify as paraphernalia under the statute.

viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (quoting *Commonwealth v. Fears*, 836 A.2d 52, 58-59 (Pa. 2003)). The Commonwealth may sustain its burden to prove each element of the charged offenses through the use of wholly circumstantial evidence. *Id.* (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Id.* (citation omitted).

We first address Robertson's contention that two plastic bags containing marijuana do not constitute drug paraphernalia under the statute. Robertson was convicted of possession of drug paraphernalia under 35 P.S. § 780-113(a)(32), which prohibits "[t]he use of, or possession with intent to use, drug paraphernalia for the purpose of . . . packing, repacking, storing, [or] containing . . . a controlled substance in violation of this act." 35 P.S. § 780-113(a)(32). "Drug paraphernalia" is defined by 35 P.S. § 780-102, as

> all equipment, products and materials of any kind which are used, intended for use or designed for use in . . . packaging, repackaging, storing, [or] containing . . . a controlled substance in violation of this act. It includes, but is not limited to:
>
> . . .
>
> (9) Capsules, balloons, envelopes and other containers used, intended for use or designed for use in packaging small quantities of controlled substances.

(10) Containers and other objects used, intended for use or designed for use in storing or concealing controlled substances.

35 P.S. § 780-102.

Because the statute explicitly includes containers intended for use in packaging and storing small quantities of controlled substances,[5] we conclude that the plastic bags containing Robertson's marijuana were contemplated by the statute's definition of drug paraphernalia. We are unpersuaded that **Miller** demands a different result, as that case confronted only the question of whether the statute's definition of drug paraphernalia included the burning paper encasing a single joint. **See Miller**, 130 A.3d at 6. Moreover, precedent has established that the storage containers of controlled substances, including bags containing marijuana, constitute paraphernalia. **See, e.g., Commonwealth v. Caban**, 60 A.3d 120, 133 (Pa.Super. 2012) (finding cellophane in which marijuana was wrapped constituted paraphernalia), *overruled on other grounds by* **In re L.J.**, 79 A.3d 1073 (Pa. 2013); **Commonwealth v. Coleman**, 984 A.2d 998, 1002 (Pa.Super. 2009) (holding glass vials and glassine baggie containing drugs and sock they were stored in were paraphernalia); **Commonwealth v. Pitner**, 928 A.2d 1104, 1109 (Pa.Super. 2007) (holding bag containing marijuana qualified as paraphernalia).

---

[5] Under Subsection (a)(31), a small amount of marijuana is less than 30 grams. **See** 35 P.S. § 780-113(a)(31).

As we hold that the bags containing marijuana were sufficient evidence of drug paraphernalia, we need not address Robertson's argument that there was insufficient evidence that he possessed the digital scale found in his car. However, considering that the Commonwealth can prove that contraband was both jointly and constructively possessed by showing that a defendant had knowledge of the existence and location of contraband, *see Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa.Super. 1981), and that "a jury need not ignore presence, proximity and association" in determining whether the defendant had knowledge of and power over the contraband found at the scene, *Commonwealth v. Vargas*, 108 A.3d 858, 869 (Pa.Super. 2014) (*en banc*) (citation omitted), we conclude that there was sufficient evidence that Robertson constructively possessed the digital scale. Robertson's mail was scattered across the backseat of the vehicle, Robertson was driving the vehicle, and Officer Diaz easily noticed the scale next to the stick shift. Robertson's challenges to the sufficiency of the evidence of possession of drug paraphernalia are without merit.

### III. Jury Instructions

In his final issue, Roberson argues that the trial court erred in refusing to re-instruct the jury on the justification defense when it re-charged the jury on the elements of the corresponding crime of fleeing and eluding. According to Robertson, it was fundamentally unfair to explain the elements of the crime without also explaining what negates those elements. Robertson also

complains that the court erroneously believed it was not permitted to reinstruct on a point that the jury did not specifically request.

We review the denial of a request to give a jury instruction for whether the court abused its discretion or committed an error of law. **See Commonwealth v. Phillips**, 946 A.2d 103, 110 (Pa.Super. 2008).

Robertson has set forth no authority establishing that the jury must be reinstructed on the elements of a defense when it reinstructed on the elements of the corresponding crime. And we are not persuaded that the result here was fundamentally unfair, where the jury submitted a total of five questions to the court, none of which displayed confusion regarding the court's earlier explanation of the justification defense.

We are instead guided by this Court's decision in **Commonwealth v. Akers**, 572 A.2d 746 (Pa.Super. 1990). In that case, during deliberations, the jury requested that the trial court repeat the instructions regarding first and second degree murder. **Akers**, 572 A.2d at 755. The trial court declined the defendant's request "to recharge the jury on all degrees of homicide." **Id.** We reiterated that a trial court "may properly confine supplemental instructions to the particular question asked by the jury despite a defendant's request for additional instructions." **Id.** (quoting **Commonwealth v. Haddle**, 413 A.2d 735, 738 (Pa.Super. 1979)). We held that there was "no abuse of discretion in the trial court's confining its supplemental instructions to the specific areas of the jury's inquiry." **Id.** Here, the decision whether to reinstruct the jury on

the defense of justification was within the purview of the trial court, and we discern no abuse of discretion.

Having found no basis on which to provide relief, we affirm Robertson's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/05/2019