J-S64004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :            PENNSYLVANIA
                                                    :

           v.                                 :
                                                    :

KELLIE HENNINGER                      :
                                                      :

            Appellant                       :     No. 522 EDA 2018

Appeal from the Judgment of Sentence January 31, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0005408-2016

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                   **FILED MARCH 05, 2019**

Kellie Henninger appeals from the judgment of sentence of six months of intermediate punishment, plus fines and costs, imposed after she was convicted of driving under the influence ("DUI") under 75 Pa.C.S. § 3802(a)(2) (blood alcohol content ("BAC") between .08 and .10%). Specifically, Appellant challenges the denial of her pretrial motion to suppress physical evidence. We affirm.

The trial court made the following findings of fact at the hearing on Appellant's suppression motion. Shortly after midnight on September 24, 2016, Officer Dominic Romagnoli of the Slatington Borough Police Department was on patrol and noted two vehicles in the parking lot of a public park that is a trailhead for a county park. The lot was known for drug activity. Officer Romagnoli observed one of the vehicles pull out of the lot. He turned into the parking area to check on the other vehicle, in which Appellant sat without

having the lights illuminated. Appellant then activated her headlights and put her vehicle into reverse. Officer Romagnoli activated his overhead lights, parked behind Appellant's vehicle, and asked Appellant what she was doing in the lot after hours. Appellant refused to answer questions, protesting that the officer had no basis to stop her. Officer Romagnoli inquired whether Appellant had been drinking, and she admitted to having consumed alcohol earlier. After further interaction, Appellant was taken into custody and a blood test[1] revealed a BAC of .08%.

Appellant was charged with DUI–general impairment and DUI–BAC between .08 and .10%. Appellant filed a pretrial motion to suppress the physical evidence, "including the results of the blood draw as well as the observations of the arresting officers," alleging that Officer Romagnoli lacked reasonable suspicion to stop her vehicle. Motion to Suppress, 8/10/17, at ¶¶ 8-9. The trial court denied the motion after a hearing, concluding that the officer "articulated legitimate reasons on the record for conducting a stop and investigative detention of [Appellant]." Trial Court Opinion, 9/19/17, at 5-6. Appellant proceeded to a non-jury trial at which the Commonwealth withdrew the charge of DUI–general impairment, and the trial court found her guilty of

_____

[1] The circumstances surrounding the blood testing are not apparent from the record. We note that neither in the trial court nor on appeal does Appellant challenge the admissibility of the blood test results under **Birchfield v. North Dakota**, 136 S. Ct. 2160 (2016) (providing warrantless blood draw cannot be justified as a search incident to arrest; police may not threaten enhanced punishment for refusing a blood test as a means to obtain consent).

DUI–BAC between .08 and .10%. Appellant was immediately sentenced as indicated above.

Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents one question for our review: "whether the suppression court erred in finding that police had sufficient reasonable suspicion to warrant the seizure of [Appellant]?" Appellant's brief at 4 (unnecessary capitalization omitted).

We consider Appellant's question mindful of the following.

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa.Super. 2017) (cleaned up).

In resolving Appellant's claim, we first must define the nature of Officer Romagnoli's interaction with Appellant, as different levels of suspicion are required to justify different types of encounters. As this Court has explained:

Traditionally, this Court has recognized three categories of encounters between citizens and the police. These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), . . . need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Baldwin*, 147 A.3d 1200, 1202 (Pa.Super. 2016) (quoting *Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa.Super. 2008)).

In the instant case, Officer Romagnoli testified that he pulled his car behind Appellant's vehicle and activated his overhead lights while she was attempting to back out of her parking space. N.T. Pretrial Motions, 8/29/17, at 15. He acknowledged that his intent in so doing was to effectuate a stop of Appellant's vehicle, and that if she had attempted to leave, he would have followed her. *Id*. The Commonwealth conceded that the interaction was from its inception an investigative detention, and the trial court decided the motion on that basis. *See id*. at 30; Trial Court Opinion, 9/19/17, at 4. We agree that Appellant was subjected to an investigative detention. *See*, *e.g.*, *Commonwealth v. Mulholland*, 794 A.2d 398, 402 (Pa.Super. 2002) (holding that investigative detention commenced when officer "parked his cruiser in such a fashion as to make it difficult if not impossible for the van to leave the parking lot"). Accordingly, to be valid, the stop must have been

supported by "reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." *Commonwealth v. Mackey*, 177 A.3d 221, 229 (Pa.Super. 2017) (internal quotation marks omitted). "The fundamental inquiry is an objective one, namely, whether the facts available to the officer at the moment of the intrusion warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id*. (cleaned up).

> In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Raglin*, 178 A.3d 868, 872 (Pa.Super. 2018) (internal citations and quotation marks omitted). "Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." *Commonwealth v. Foglia*, 979 A.2d 357, 361 (Pa.Super. 2009) (cleaned up).

The relevant circumstances surrounding the stop of Appellant are as follows. At approximately 12:20 a.m., Appellant's vehicle was parked in the the Rails to Trails parking lot, near the public restrooms which are open from 8:00 a.m. to 8:00 p.m. N.T. Pretrial Motions, 8/29/17, at 7-8. In the vicinity

were a storage building and a picnic area. *Id*. There were no businesses open or other reason for parking in the trailhead parking lot after the park was closed. *Id*. at 11. Police had encountered criminal activity in the lot after hours, namely drug dealing, drug use, and minors parking to take the trail to "the bed bug cave," a safety hazard that is marked "no trespassing." *Id*. at 10-11. For that reason, when the park is closed, "any vehicle that's ever been down there[,] we always go in and see what they're doing and see why they're down there." *Id*. at 11.

Officer Romagnoli advised Appellant that he stopped her for being in the parking lot after hours. *Id*. at 18. He acknowledged that, while there was a township ordinance that prohibited parking in the lot after hours, he did not cite Appellant for its violation because it only applied between 2:00 a.m. and 6:00 a.m. in Slatington Public Parks. *Id*. at 16-17. Officer Romagnoli did not recall if any signs indicated that the park or lot was closed during certain times, and Appellant offered evidence that there were no signs posted on the property. *Id*. at 16, 23, 25. Appellant also offered uncontradicted evidence that the Rails to Trails park in Slatington Township was owned by Lehigh County and leased by the township. *Id*. at 20. Before Appellant's trial began, the trial court granted the Commonwealth's request to reopen the record on the suppression motion, taking judicial notice that the Lehigh County Park Rules and Regulations provide that "[u]nless specific hours are posted, use of

County properties between dusk and dawn is prohibited." N.T. Trial and Sentencing, 1/31/18, at 4; Commonwealth Exhibit 1 at ¶ 11.

Appellant argues that the fact that she was in a high-crime area was insufficient to establish reasonable suspicion that criminal activity was afoot. Appellant's brief at 12. Were that the only circumstance in support of the stop, we would agree. *See Commonwealth v. Key*, 789 A.2d 282, 290 (Pa.Super. 2001) (collecting cases that establish the principle that the "act of merely walking away from police officers in a 'high crime area' is manifestly insufficient to justify an investigative detention of that individual"). However, the facts also establish that Appellant was in the Rails to Trails parking lot after midnight. Appellant contends that this cannot justify the stop because, contrary to Officer Ramagnoli's belief, the park and lot were owned by the county, not the township. Appellant's brief at 11. Appellant ignores the evidence that the county rules and regulations also provide that the park was closed between dusk and dawn and, therefore, the park was closed at the time Appellant was there under either the township or county rules.

The testimony and photographic evidence also established that, with no business open at the time and the availability of parking elsewhere along Main Street, there was no reason for Appellant to be in the Rails to Trails lot other than to access the park. An objective view of these circumstances would lead a person of reasonable caution to believe that Appellant may have been in the park unlawfully. As such, Officer Romagnoli was constitutionally permitted to

briefly detain Appellant to investigate further. **See**, **e.g.**, **Commonwealth v. Shabazz**, 18 A.3d 1217, 1222-23 (Pa.Super. 2011) (holding circumstances warranted investigative detention where officer had articulated facts to suggest defendant may have violated vehicle code). Accordingly, the trial court did not err in denying Appellant's motion to suppress.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/5/19